



Caution
As of: Oct 03, 2012

DONNA L. SHARPE, Executor of the Estate of TYLER WAYNE SHARPE, Deceased, DONNA L. SHARPE, as beneficiary, Plaintiff, v. UNITED STATES OF AMERICA, Defendant.

Civil Action No. 2:04cv621

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, NORFOLK DIVISION

230 F.R.D. 452; 2005 U.S. Dist. LEXIS 21222; 62 Fed. R. Serv. 3d (Callaghan) 615

August 4, 2005, Decided

**DISPOSITION:** [**1] Plaintiff's oral motion to amend or supplement her *Rule 26(a)(2)(B)* disclosures DENIED. Defendant's motion to exclude testimony of plaintiff's expert and motion for summary judgment GRANTED.

**COUNSEL:** FOR PLAINTIFF: Philip J. Geib, Virginia Beach, VA.

FOR DEFENDANT: Anita K. Henry, Assistant United States Attorney, United States Attorney's Office, Norfolk, VA.

**JUDGES:** Jerome B. Friedman, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Jerome B. Friedman

**OPINION**

[*453] ORDER and OPINION

This matter comes before the court on the motions of the defendant, the United States, to exclude the testimony of the plaintiff's designated expert witness and for summary judgment. These motions were filed on May 2, 2005, and the plaintiff filed an opposition memorandum addressing both motions on May 24, 2005. On June 10, 2005, the court conducted a hearing on these motions. During the course of the hearing, the plaintiff made an oral motion for leave to amend or supplement the disclosures she had made pursuant to *Federal Rule of Civil Procedure 26(a)(2)(B)*.

The trial in this matter was originally scheduled to begin on July 28, 2005. Following the hearing, the court took the [**2] motions of [*454] the parties under advisement. On June 14, 2005, the court, by letter, advised counsel for both parties that the court had decided to deny the oral motion of the plaintiff for leave to amend or supplement her *Rule 26(a)(2)(B)* disclosures and to grant the defendant's motions. The court further informed the parties that a detailed order and opinion would be prepared explaining the reasons for these

Exhibit A

Case 4:12-cv-00049-MSD-TEM   Document 42-1   Filed 10/05/12   Page 2 of 10 PageID# 534

Page 2

230 F.R.D. 452, *454; 2005 U.S. Dist. LEXIS 21222, **2;
62 Fed. R. Serv. 3d (Callaghan) 615

decisions. Accordingly, for the reasons presented herein, the court **DENIES** the plaintiff's motion for leave to amend or supplement her *Rule 26(a)(2)(B)* disclosures, and **GRANTS** the defendant's motion to exclude and for summary judgment.

I. Background

This is a medical malpractice case brought by Donna L. Sharpe, the executor and beneficiary of the estate of her deceased husband, Tyler Wayne Sharpe. The alleged malpractice occurred as a result of the treatment of Mr. Sharpe by physicians and staff at the Veteran Affairs Medical Center in Hampton, Virginia. Mr. Sharpe died on or about May 3, 2004 as a result of lung cancer. The diagnosis of the cancer was made in December 2002, following a chest x-ray dated September 30, 2002 that identified a possible mass lesion that [**3] proved to be cancerous. As set forth in the Complaint and the plaintiff's opposition memorandum to the defendant's motions, the plaintiff proceeds under the Federal Tort Claims Act ("FTCA"), see *28 U.S.C. §§ 2671- 2680*, and her claim of negligence alleges that agents of the defendant failed to diagnose the cancer of Mr. Sharpe at an earlier time. The plaintiff contends that earlier diagnosis would have permitted more successful treatment of Mr. Sharpe's cancer.

The instant motions stem from a discovery dispute between the parties regarding the adequacy of the plaintiff's expert reports, produced pursuant to *Federal Rule of Civil Procedure 26(a)(2)(B)*. On March 11, 2005, the defendant propounded its first set of interrogatories to the plaintiff. Included therein were requests for information regarding the actions or omissions of agents of the defendant alleged to be responsible for the harm to Mr. Sharpe, as well as requests for details concerning alternative measures which should have been taken to avoid his injury or death. These interrogatories are set forth in Exhibit A1 to the memorandum in support of the defendant's [**4] motions. In her responses to this first set of interrogatories, the plaintiff made repeated references to the information contained in the Complaint and also to forthcoming reports of her expert witnesses. The defendant contends that the plaintiff's responses were evasive and non-responsive.

On November 18, 2004, the defendant received the plaintiff's administrative claim of medical malpractice. Attached to this claim was a report from Integrated Medical Services, prepared on March 24, 2003. In this report, which does not appear to have been provided as an expert report pursuant to *Rule 26(a)(2)(B)*, Dr. Ignacio Ripol, a witness retained by the plaintiff, reported that he did not see any evidence of carcinoma present on a CAT scan performed on Mr. Sharpe in 2000. There appears to be no dispute about the adequacy of this report. The defendant includes a brief discussion of it only for the purpose of showing that Dr. Ripol's report does not support the plaintiff's claim of negligence in failing to diagnose Mr. Sharpe's cancer.

On April 25, 2005, following a request for the disclosure of expert reports from the defendant and in accord with the mandated disclosure date under the *Rule* [**5] *16(b)* scheduling order, the plaintiff provided two expert witness reports pursuant to *Rule 26(a)(2)(B)*: One from Dr. Richard Hoffman, a board certified internal medicine specialist, and another from Dr. John Kiev, an assistant professor of cardiothoracic surgery at the Medical College of Virginia. It is these two reports that form the basis for the defendant's motions.

A. Dr. Hoffman's Report

The plaintiff's *Rule 26(a)(2)(B)* disclosure states that Dr. Hoffman considered information or data that had previously been provided to the defendant, including "all medical records regarding Tyler Wayne Sharpe, deceased." Dr. Hoffman's attached report indicates that he reviewed the records of Mr. Sharpe as well as certain x-rays. He does not describe the specifics of such records, the time periods they covered, or the treatment [*455] to which they were related. Dr. Hoffman notes that he discussed the x-rays with a radiologist, Dr. Sean Mahan. No further information on Dr. Mahan is given, although Dr. Hoffman states that a report from Dr. Mahan will follow.

Dr. Hoffman's report then proceeds into a chronology of Mr. Sharpe's treatment, beginning in August 1999 and ending in April 2002. This chronology [**6] is brief and not very detailed. It generally sets forth a date, Mr. Sharpe's ailment or complaint that occurred on this date and the corresponding medical treatment. For a number of dates, Dr. Hoffman placed in bold text a notation indicating that treatment was considered but not performed, or that a specific treatment was neither considered nor performed at that time. The inference is that the treatment described in the bolded text should have been performed on Mr. Sharpe. [1]

Case 4:12-cv-00049-MSD-TEM  Document 42-1  Filed 10/05/12  Page 3 of 10 PageID# 535

230 F.R.D. 452, *455; 2005 U.S. Dist. LEXIS 21222, **6;
62 Fed. R. Serv. 3d (Callaghan) 615

Page 3

1  At the June 10, 2005 hearing, counsel for the plaintiff did argue, in fact, that the bolded notations described deviations from the standard of care.

Following this one and a half page chronology, Dr. Hoffman makes the following conclusion:

> There are numerous opportunities where further investigation may have led to an earlier diagnosis of cancer and may have resulted in the possibility of more definitive treatment and increased survival as a result. That is my opinion to reasonable degree of medical certainty.

It appears [**7] as if the "numerous opportunities" referred to by Dr. Hoffman in the above conclusion refer to the bolded notations included in his chronology of Mr. Sharpe's treatment history. Notably, Dr. Hoffman does not indicate what possibly "more definite" treatments could have been performed that would have led to increased survival had Mr. Sharpe's cancer been discovered at an earlier date. Also attached to this report is Dr. Hoffman's curriculum vitae.

B. Dr. Kiev's Report

The report of Dr. Kiev is very brief. It consists solely of a letter written to plaintiff's counsel, dated April 15, 2005. Dr. Kiev indicates that he reviewed the records of Mr. Sharpe, and also the chronology and medical report of Dr. Hoffman.

Dr. Kiev's analysis is so cursory that it can be quoted in full:

> In summary, I agree with Dr. Hoffman. If Mr. Sharpe's work-up follow-up had been completed in a timely fashion, i.e., if bronchoscopy has been performed earlier, the potential for intervening in this gentleman's non-small cell cancer would have been greater. Early diagnosis is the critical issue here. Unfortunately, it appears the patient got lost in the VA medical system and follow-up was never completed [**8] and full-work-up was never followed through.

> His lung cancer was already extensive and metastic by the time a formal diagnosis was made.

As with the report prepared by Dr. Hoffman, Dr. Kiev's report also does not specify what type of intervening actions would have improved Mr. Sharpe's survival chances. Nor does Dr. Kiev specify what types of "work-up" should have been performed in a more timely fashion, with the exception of a reference to an earlier bronchoscopy and even this recommendation is nonspecific as to when it should have been performed. In addition to this letter-report, the plaintiff provided Dr. Kiev's curriculum vitae and his legal fee schedule.

The defendant contends that the expert reports of Dr. Hoffman and Dr. Kiev fail to meet the requirements of *Rule 26(a)(2)(B)* such that the testimony of these experts should be excluded at trial pursuant to *Federal Rule of Civil Procedure 37(c)(1)*. The defendant maintains that if such testimony is excluded, the plaintiff would not be able to satisfy the prima facie case required to establish a claim of medical negligence, and the matter could not go to the jury. Accordingly, the [**9] defendant claims that summary judgment is proper and required if any testimony based on the reports is excluded at trial.

Beyond the claimed procedural deficiencies of the reports in failing to meet all of the requirements of *Rule 26(a)(2)(B)*, the defendant also contends that any permitted testimony flowing from the reports would fail to [*456] establish the required expert opinion needed to support a prima facie claim of negligence on the part of the defendant's agents. Unlike the request for summary judgment based on the assumption that testimony based on the expert reports is excluded, the defendant, in this latter motion for summary judgment, moves for summary judgment on the grounds that even if the experts were to provide evidence consistent with their reports, such evidence would fail to establish any genuine issue of material fact with respect to whether the defendant's agents acted with negligence.

Thus, the defendant concludes that the reports should be excluded on procedural grounds because they do not comply with the *Rule 26(a)(2)(B)* requirements and fail to set forth a prima facie case of negligence. In a somewhat intertwined fashion, the defendant claims that these underlying [**10] procedural failures demonstrate the substantive problems in the plaintiff's case such that

Case 4:12-cv-00049-MSD-TEM   Document 42-1   Filed 10/05/12   Page 4 of 10 PageID# 536

Page 4

230 F.R.D. 452, *456; 2005 U.S. Dist. LEXIS 21222, **10;
62 Fed. R. Serv. 3d (Callaghan) 615

summary judgment is proper even if the expert opinions based on the reports were admissible evidence.

The plaintiff's response to these motions is very brief. She contends that the Complaint sets forth the various acts of negligence committed by the defendant's agents. Furthermore, the plaintiff claims that the reports of her experts do identify various acts of negligence as well as establishing the basis for proximate cause. The plaintiff contends that it is not necessary to identify a specific date on which Mr. Sharpe's cancer should have been diagnosed; rather, it is only necessary to identify, to a reasonable degree of medical probability, that the cancer would have been identified in a more timely fashion if not for the negligent acts of the defendant's agents. The plaintiff claims that her expert reports are not speculative and are in compliance with *Rule 26(a)(2)(B)*. The plaintiff offers no other evidence in response to the motion for summary judgment other than the reports of Dr. Hoffman and Dr. Kiev.

At the June 10, 2005 hearing on this matter, the plaintiff did agree with the court [**11] that her expert reports did have certain failings, including the lack of any reference to the necessary standard of care. The plaintiff's counsel protested, however, that he could not write the report for the experts and had to accept the reports with which he was provided. The plaintiff argued, as suggested above, that the bolded portions of Dr. Hoffman's report indicated violations of the standard of care by the defendant's agents. The plaintiff also claimed that the concluding opinions of her experts were sufficient to create a prima facie case of negligence. The plaintiff then moved for additional time to rectify any inadequacies in her *Rule 26(a)(2)(B)* disclosures.

II. Standard of Review

A. *Federal Rule of Civil Procedure 26(a)(2)(B)*

*Federal Rule of Civil Procedure 26(a)(2)(B)* requires that each party disclose the identity and report of any witness who is retained to provide expert testimony. *Fed. R. Civ. P. 26(a)(2)(A) & (B)*. The report submitted along with the identifications is to contain: A complete statement of all opinions to be expressed and the basis [**12] and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of prior publications; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the last ten years. *Fed. R. Civ. P. 26(a)(2)(B)*. The parties are under a duty to supplement the information contained in any such reports as stated in *Rule 26(e)(1)*. *Fed. R. Civ. P. 26(e)(1)*. A party that fails, without substantial justification, to disclose information required by *Rule 26(a)* or *26(e)(1)*, is not permitted to use as evidence at trial any information not so disclosed. See *Fed. R. Civ. P. 37(c)(1)*.

B. Summary Judgment

Summary judgment under *Federal Rule of Civil Procedure 56* is appropriate only when the court, viewing the record as a whole and in the light most favorable to the non-moving party, [**13] determines that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. See, e.g., *Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 91 L. Ed. 2d 265,* [*457] *106 S. Ct. 2548 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985)*. The court must assess the evidence and draw all permissible inferences in the non-movant's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. Nevertheless, the non-movant must make a sufficient evidentiary showing on each element of her claims such that a jury could reasonably find in her favor. *Celotex, 477 U.S. at 322*. While it is the movant's burden to show the absence of a genuine issue of material fact, *Pulliam Investment Co., Inc. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987)*, it is the non-moving party's burden to establish its existence. See *Matsushita, 475 U.S. at 585-587*.

The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact [**14] finder] might return a verdict in [her] favor." *Anderson, 477 U.S. at 257*. The evidence that the non-moving party presents to this end must be more than a "mere scintilla." *Barwick v. Celotex Corp., 736 F.2d 946, 958-959 (4th Cir. 1984)*. In order for the non-moving party to survive summary judgment, she must present evidence that is "significantly probative." *Celotex, 477 U.S. at 327*. If the evidence presented by the non-moving party is merely colorable, or is not

Page 5

230 F.R.D. 452, *457; 2005 U.S. Dist. LEXIS 21222, **14;
62 Fed. R. Serv. 3d (Callaghan) 615

significantly probative, summary judgment must be granted. *Anderson, 477 U.S. at 249-250*. District courts have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987)* (citing *Celotex, 477 U.S. at 323-25*).

III. Discussion

The court's disposition of these motions turn on both the procedural and substantive adequateness of each of the plaintiff's expert reports, as the plaintiff has put forward no other evidence in response to the motion for summary judgment. See *Anderson, 477 U.S. at 257* [**15] (describing that non-moving party must come forward with evidence showing disputed issue of fact to avoid summary judgment). Although the defendant's two motions are certainly related, the court first discusses the adequacy of the reports under *Rule 26(a)(2)(B)*, in terms of whether they should be excluded for failing to meet the *Rule 26(a)(2)(B)* disclosure requirements. If testimony based on the reports should be excluded, then summary judgment is clearly appropriate as the plaintiff will have failed to meet her burden of producing admissible evidence to create a genuine issue of material fact. See id.

Following this procedural discussion, the court next turns to the discussion of summary judgment from a substantive standpoint. In assuming the reports are procedurally sufficient such that the plaintiff's experts could testify in accordance with their contents at trial, the substance of these reports must satisfy the plaintiff's burden of establishing a prima facie case of negligence in order for summary judgment to be avoided.

The court concludes that summary judgment is warranted under both of the defendant's motions. First, the plaintiff's expert reports present deficiencies [**16] that mandate the exclusion of the testimony of the plaintiff's experts at trial because the reports do not comply with the requirements of *Rule 26(a)(2)(B)* and the plaintiff has failed, without substantial justification, to remedy these deficiencies. Without the testimony forecasted in these reports, the plaintiff cannot establish the prima facie case that is necessary for her claims to be presented to the jury.

Additionally, even assuming that the reports of plaintiff's experts met the requirements of *Rule 26(a)(2)(B)* such that her experts could testify in accordance with their contents, summary judgment is still appropriate because this projected testimony does not suffice to establish the necessary prima facie case of medical negligence. Owing to these substantive failings, the plaintiff's motion to amend or supplement her expert reports to better conform to the *Rule 26(a)(2)(B)* requirements would serve no end. The court cannot allow the plaintiff to avoid her disclosure requirements under *Rule 26(e)(1)* by submitting untimely disclosures [*458] that would not cure the substantive flaws in her claim of negligence.

A. Motion to Exclude Testimony of Dr. Hoffman and Dr. Kiev

The Advisory [**17] Committee's Note to the 1993 amendments to *Rule 26* reveal that the report to be provided under *Rule 26(a)(2)(B)* is to be "a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." *Fed. R. Civ. P. 26* (advisory committee's note to 1993 amendments). The reason for this amendment was that information disclosed under the former rule in answering interrogatories about the substance of expert testimony "was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of a witness." Id.

Thus, the expert report should be written in a manner that reflects the testimony the expert witness is expected to give at trial. See id. Importantly, for the purposes of considering the plaintiff's motion to amend, the Advisory Committee's Note to the 1993 amendments to *Rule 26(a)(2)(B)* provides that "*Rule 26(a)(2)(B)* does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, . . . this assistance may be needed." Id. [**18] A failure to disclose the information required by *Rule 26(a)(2)(B)* results in an exclusion of the expert testimony at trial. *Fed. R. Civ. P. 37(c)(1)*.

Under this standard, it is apparent that the reports of the plaintiff's experts fall short in their compliance with the *Rule 26 (a)(2)(B)* requirements. First, the opinions of both doctors, to the extent they can be isolated from such brief reports, are not supported by the required basis and reasons. See *Smith v. Baptist Healthcare System. Inc., 23 Fed. Appx. 499, 501 (6th Cir. 2001)* (discussing that expert's conclusory opinion was inadequate for not including "complete statement of all opinions to be expressed and the basis and reasons therefor").

Case 4:12-cv-00049-MSD-TEM   Document 42-1   Filed 10/05/12   Page 6 of 10 PageID# 538

Page 6

230 F.R.D. 452, *458; 2005 U.S. Dist. LEXIS 21222, **18;
62 Fed. R. Serv. 3d (Callaghan) 615

For instance, Dr. Kiev opines that early diagnosis would have resulted in the potential for more successful treatment. It is completely unclear from his letter-report, however, what the reasons are for this opinion. Although Dr. Kiev states that more timely follow-up would have led to an earlier diagnosis, there is no supporting rationale for his conclusion that the earlier diagnosis would have resulted in more successful treatment. [**19] Although the plaintiff has included Dr. Kiev's fee schedule, his actual compensation for tendering this report is also not clear. See *Fed. R. Civ. P. 26(a)(2)(B)*.

Dr. Hoffman does set forth a more comprehensive report in terms of completing a chronology of Mr. Sharpe's medical history. Yet his conclusory opinion that there were numerous opportunities where further investigation may have led to earlier diagnosis and the possibility of more definite treatment also lacks the necessary supporting basis and reasons. See *Smith, 23 Fed. Appx. at 501*. Dr. Hoffman does not explain at all his reasons for concluding that further investigation may have led to earlier diagnosis and more definite treatment. See also infra Part III.B (describing omission in report of discussion of standard of care and causation). It also appears that the plaintiff has not set forth the compensation to be paid to Dr. Hoffman. Additionally, other than the vague reference to a review of the medical records of Mr. Sharpe, the doctors do not set forth what data or information that they relied upon in making these opinions. See *Smith, 23 Fed. Appx. at 501*. [**20]

Thus, neither report contains the required complete statement of opinions and the basis for those opinions. See *Campbell v. McMillin, 83 F. Supp. 2d 761, 764 (S.D. Miss. 2000)* (noting that most important element of *Rule 26* analysis is whether report contains complete statement of opinions and basis therefor). Additionally, neither report is sufficiently detailed and complete enough to enable adequate preparation by the defendant. An expert's report must be "detailed and complete" in order to "avoid the disclosure of 'sketchy and vague' expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc., 73 F.3d 546, 571 (5th Cir. 1996)* (citing *Fed. R. Civ. P. 26* Adv. Comm. Notes). As a sanction for failure to comply with *Rule 26(a)*, the offending party [*459] may be prohibited from offering testimony flowing from the report at trial. See *Heidtman v. County of El Paso, 171 F.3d 1038, 1040 (5th Cir. 1999)*.

The problems with these reports is that they do not address the issues that the 1993 amendments to *Rule 26(a)(2)(B)* were designed to address - that of sketchy and vague expert summaries [**21] that do not dispense with the need to depose or adequately forecast trial testimony. See *Fed. R. Civ. P. 26* (advisory committee's note to 1993 amendments); see also *Salado v. Gen. Motors. Corp., 150 F.3d 735, 742 n.6 (7th Cir. 1998)* (stating that an expert report must be detailed and complete so that "opposing counsel is not forced to depose an expert in order to avoid ambush at trial and sufficiently complete so as to shorten or decrease the need for expert depositions and conserve resources"). The defendant has advised the plaintiff of the problems with these reports, however, no remedial supplemental information has been provided and, prior to the June 10, 2005 hearing, the plaintiff saw no reason to do so. See *Fed. R. Civ. P. 26(e)(1)* (discussing duty to supplement incorrect or misleading *Rule 26(a)(2)(B)* disclosures). Following the information presented during the course of the June 10th hearing, it certainly appears that the plaintiff's counsel simply submitted to the defendant the information that he was provided with from both doctors. The problem remains, however, that [**22] these reports are lacking in significant respects.

The court notes that exclusion can be avoided if the plaintiff has substantial justification for the inadequate disclosure. See *Fed. R. Civ. P. 37(c)(1); Campbell, 83 F. Supp. 2d at 764*. In this case, however, the plaintiff argued in her opposition memorandum that no inadequacy existed. At the June 10, 2005 hearing, the only justification offered by the plaintiff was that she could not control the manner in which her experts prepared their reports. As the court has reviewed, however, the Advisory Committee's Note to the 1993 amendments to *Rule 26(a)(2)(B)* does provide that a party's attorney may assist in the preparation of these reports. See *Fed. R. Civ. P. 26(a)(2)(B)* (advisory committee's note to 1993 amendments). In any case, as is detailed below in the discussion of the defendant's motion for summary judgment, the plaintiff's reports fail to fulfill both the procedural requirements of *Rule 26(a)(2)(B)* and the substantive requirements to establish a prima facie case of medical negligence. Accordingly, the court finds that no [**23] substantial justification has been established for the inadequacies of the plaintiff's expert disclosures. See *Fed. R. Civ. P. 37(c)(1)*.

In this case, the only designated experts of the plaintiff are Dr. Hoffman and Dr. Kiev. Because the

Case 4:12-cv-00049-MSD-TEM  Document 42-1  Filed 10/05/12  Page 7 of 10 PageID# 539

Page 7

230 F.R.D. 452, *459; 2005 U.S. Dist. LEXIS 21222, **23;
62 Fed. R. Serv. 3d (Callaghan) 615

plaintiff will be precluded from presenting testimony based on the failure of the expert reports to satisfy the *Rule 26(a)(2)(B)* requirements, the plaintiff will not be able to establish a causal link between the death of Mr. Sharpe and any action or inaction on the part of the defendant's agents. See infra Part III.B. Accordingly, no genuine issue of material fact exists and summary judgment is warranted.

B. Motion for Summary Judgment

Even were the court to overlook the procedural deficiencies in the reports of the plaintiff's experts, it is apparent from their substance, which is intended to reflect the doctors' proposed trial testimony, that the plaintiff has not met her burden of establishing a prima facie case of negligence on the part of the defendant's agents. In other words, even if the court were to allow the plaintiff's experts to testify as projected in their reports, this testimony, without [**24] regard to what form it takes, does not substantively permit a finding of a prima facie case of negligence that would permit the plaintiff's case to proceed to a jury.

Liability under the FTCA is premised upon "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *28 U.S.C. § 1346(b)*. Accordingly, liability in this case must be decided with reference to Virginia law. See *Vandergrift v. United States, 500 F. Supp. 229, 232-33 (E.D. Va. 1978)*.

A doctor is not the guarantor of favorable results to a patient, and failure of a proper attempt to cure a patient does not [*460] raise a presumption of negligence. See *Sawyer v. United States, 465 F. Supp. 282, 286-87 (E.D Va. 1978)*. Under Virginia law, a prima facie case of medical malpractice requires that the plaintiff establish proof: (1) of the applicable standard of care; (2) that this standard of care was violated; and (3) that the violation of the standard of care is causally connected with the harm suffered by the plaintiff. See *Fitzgerald v. Manning, 679 F.2d 341, 346 (4th Cir. 1982)*. [**25] The appropriate standard of care is established through testimony by expert witnesses familiar with the practice of a reasonably prudent physician practicing in Virginia at the time of the injury. See *Va. Code. Ann. § 8.01-581.20*; *Waters v. United States, 1989 U.S. Dist. LEXIS 18060, at *10 (E.D. Va. Apr. 11, 1989)*; *Dickerson v. Fatehi, 253 Va. 324, 327, 484 S.E.2d 880 (1997)* (noting that elements of malpractice claim must often be established by expert testimony). Thus, before the issue of proximate cause can be submitted to a jury, the plaintiff must establish a prima facie case on the issue of negligence. See *Smith v. United States, 1995 U.S. Dist. LEXIS 13863, at *5 (D. Del. Sept. 20, 1995)*; *Rogers v. Marrow, 243 Va. 162, 167, 413 S.E.2d 344, 8 Va. Law Rep. 1868 (1992)* (describing that in order to recover for medical negligence, plaintiff must prove through expert testimony applicable standard of care, breach of that standard, proximate causation, and damages).

It is not enough for the plaintiff's expert to testify that the defendant's negligence might or may have caused the injury on which the plaintiff bases her claim. The expert must establish that the [**26] defendant's negligence was "more likely" or "more probably" the cause of the plaintiff's injury when it is alleged that more than one cause is responsible or that the defendant's negligence was the "but-for" cause of the injury complained of when the negligence is the sole cause claimed. See *Fitzgerald, 679 F.2d at 350*. "Only if the opinion evidence on causation . . . rises to the level of a reasonable degree of medical certainty that it was more likely that the defendant's negligence was the cause than any other cause, is there sufficient evidence on causation to permit jury submission of causation." *Id. at 351*.

Although state law defines the requirements for the prima facie showing, whether there is sufficient evidence to create a jury issue is controlled by federal law. See *Fitzgerald, 679 F.2d at 346*. Because the *Rule 26(a)(2)(B)* disclosures are intended to forecast trial testimony, the prima facie showing should be evident through the disclosure of expert reports. See *Warden v. United States, 861 F. Supp. 400, 403 (E.D.N.C. 1993)* (granting summary judgment for defendant when plaintiff failed to present expert [**27] testimony that would establish prima facie case).

While a court will typically not rule on the admissibility of evidence until trial, a court may rule on whether an expert's opinion is a type of admissible evidence prior to trial. See *Benedetti v. Soo Line Railroad Co., 2004 U.S. Dist. LEXIS 24642, at *12 (N.D. Ill. Sept. 29, 2004)*. For expert opinions to be admissible, they must be made within a reasonable degree of medical certainty, be based on sufficient facts or date, and not be merely subjective and speculative. See *2004 U.S. Dist. LEXIS 24642, at 13*; *Fed. R. Evd. 702*.

From the substance of the expert reports, it is apparent that, if permitted to testify, both Dr. Hoffman and Dr. Kiev would offer their expert opinion that the agents of the defendant missed opportunities to diagnose Mr. Sharpe's cancer at an earlier date. The general opinion of both Dr. Hoffman and Dr. Kiev is that an earlier diagnosis would have resulted in a greater chance for intervening treatment that may have increased Mr. Sharpe's odds of survival. These conclusions, however, as forecasted in the reports of both doctors, are prefaced by terms such as "may" and "possibility. [**28] " Even Dr. Kiev states only that the "potential for intervening . . . would have been greater."

In looking to the necessary prima facie showing, it is first apparent that neither of the reports of Dr. Hoffman or Dr. Kiev set forth the applicable standard of care. See *Daniel v. Pearce*, 2000 U.S. App. LEXIS 8484, at *6-7 *(4th Cir. Apr. 28, 2000)* (describing that in Virginia, claim of medical malpractice requires plaintiff to establish requisite standard of care). Without meeting this prong, the [*461] plaintiff cannot show that the defendant's actions breached this standard of care. Perhaps Dr. Hoffman meant the standard of care to be inferred from his bolded references to the actions not taken by the Veterans Affairs Medical Center staff. If this is the case, it is far too opaque and nonspecific to be of evidentiary value. The setting forth of the standard of care is a necessary foundation for an opinion that the defendant's agents breached this standard.

Even assuming that the defendant's negligence was responsible for a late diagnosis of Mr. Sharpe's cancer, neither Dr. Hoffman or Dr. Kiev specify what possibly more successful treatment opportunities were foregone by a [**29] late diagnosis. This goes directly to the issue of causation. The speculative and non-specific reports of Drs. Hoffman and Kiev do not permit any evidentiary inference that the late diagnosis was the cause of the plaintiff's injuries to a reasonable degree of medical certainty. The vague references to "more definite treatment," "increased survival" and "greater . . . potential for intervening" are far too speculative to allow such opinions to go to a jury on the issue of causation. See *Fitzgerald*, 679 F.2d at 350.

A mere possibility of causation is not enough to establish a prima facie case. See *id.* at 348; see also *Young v. United States*, 648 F. Supp. 146, 151 *(E.D. Va. 1986)* (noting that causation is not established by expert testimony that medical result might have been different in absence of any particular act or omission by health care provider). Such a conclusion hints of speculation or conjecture and does not provide any evidentiary link between the breach alleged and the harm of which the plaintiff complains. See *Fitzgerald*, 679 F.2d at 348.

Both reports do attempt to link omissions by the defendant's agents [**30] to harm suffered by Mr. Sharpe resulting from a late diagnosis; however, this causation analysis is not set forth in terms of a reasonable degree of medical certainty and is merely speculative and conclusory. Although Dr. Hoffman does use the phrase "reasonable degree of medical certainty", his conclusion is that it is his opinion, to a reasonable degree of medical certainty, that "further investigation *may* have led to an earlier diagnosis and *may* have resulted in the *possibility* of more definite treatment." (emphasis added). The speculative possibilities contained in this conclusion are not saved by the use of "reasonable degree of medical certainty." See *id.*; *Owens v. Bourns, Inc.*, 766 F.2d 145, 150 *(4th Cir. 1985)* (finding that medical opinion evidence not expressed to "reasonable degree of medical certainty" did not create jury question on causation); *Benedetti*, 2004 U.S. Dist. LEXIS 24642, at *14 (finding that expert report was not admissible evidence prior to trial when opinions therein were not stated within reasonable degree of medical certainty and failed to show causation).

Accordingly, as the expert reports of Drs. Kiev and [**31] Hoffman fail to establish a prima facie case of negligence, summary judgment is also proper even in the event the testimony based on these reports was not subject to exclusion. See *Smith*, 23 Fed. Appx. at 501, 502 (finding that expert testimony based on inadequate expert report must be excluded but that, even if considered, report was insufficient basis upon which jury could find for plaintiff and finding summary judgment to be inevitable); *Dickerson*, 253 Va. 324, 484 S.E.2d 880 (noting that expert opinion must be offered to establish elements of medical malpractice claim). Beyond the proffered opinions of Dr. Hoffman and Kiev, the plaintiff has not met her burden of establishing the existence of any issue of disputed fact that would allow this case to proceed to a jury. See *Celotex*, 477 U.S. at 327.

C. Motion to Amend/ Supplement *Rule 26(a)(2)(B)* Disclosures

In her opposition memorandum to the defendant's

Case 4:12-cv-00049-MSD-TEM Document 42-1 Filed 10/05/12 Page 9 of 10 PageID# 541

Page 9
230 F.R.D. 452, *461; 2005 U.S. Dist. LEXIS 21222, **31;
62 Fed. R. Serv. 3d (Callaghan) 615

motions, the plaintiff claims that the reports of Dr. Hoffman and Dr. Kiev meet the procedural requirements of *Rule 26(a)(2)(B)* and set forth a prima facie case of negligence. As such, the plaintiff did not attempt to amend or supplement her *Rule* [**32] *26(a)(2)(B)* disclosures prior to the June 10, 2005 hearing on the defendant's motions. During the course of the hearing, however, the plaintiff's counsel agreed with the court's observation that the expert reports did fail to describe the requisite standard of care. [*462] Upon recognizing the concerns of the court, the plaintiff orally moved for additional time to amend or supplement her *Rule 26(a)(2)(B)* disclosures. The court must deny this motion for the following reasons.

First, under *Rule 26(e)(1)*, the plaintiff was under a duty to supplement her expert disclosures if the plaintiff learns "that in some material respect the information is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Fed. R. Civ. P. 26(e)(1)*. Despite being put on notice that her *Rule 26(a)(2)(B)* disclosures were inadequate, the plaintiff elected to rely on these disclosures until the court's concern was evident.

The trial in this matter was scheduled to have taken place on July 28, 2005. The plaintiff's *Rule 26(a)(2)(B)* disclosures were due on April 25, 2005, and [**33] any rebuttal disclosure was to be provided by June 9, 2005. Discovery of experts, including all depositions, were to have been concluded by June 23, 2005 according to the *Rule 16(b)* Scheduling Order. To permit the plaintiff additional time to amend her expert disclosures would work unjustifiable hardship upon the defendant in attempting to complete discovery and prepare for trial within the confines of the court's scheduling order. See *Tucker v. Ohtsu Tire & Rubber Co., Ltd., 49 F. Supp. 2d 456, 460 (D. Md. 1999)* (noting that party who delays supplementing *Rule 26(a)(2)(B)* disclosures should not automatically expect court to permit late disclosure).

At the June 10, 2005 hearing, the plaintiff's counsel offered no excuse for the inadequacies of the plaintiff's expert disclosures other than claiming that he, as an attorney, could not author the expert reports. While this is certainly true, "*Rule 26(a)(2)(B)* does not preclude counsel from providing assistance to experts in preparing the reports[.]" *Fed. R. Civ. P. 26(a)(2)(B)* (advisory committee's note to 1993 amendments). It would not have been inappropriate, for instance, for [**34] the plaintiff's counsel to inform Dr. Hoffman and Dr. Kiev that an opinion regarding the necessary standard of care was needed. Thus, the court finds no substantial justification in support of allowing additional time to amend, in view of the prejudice such delay would work upon the defendant who is "entitled, at a minimum, to the expert's opinions and the basis for those opinions." *Smith, 23 Fed. Appx. at 502*; see also *Luma Corp. v. Stryker Corp., 226 F.R.D. 536, 544 (S.D. W. Va. 2005)* (noting that if second reports contain information and opinions which should have been disclosed with first disclosure, then second reports were not in conformity with *Rule 26(e)(1)* such that supplementation need be permitted).

To the extent that the plaintiff desires to supplement her expert disclosures to remedy the incomplete or inadequate review performed by Dr. Hoffman or Dr. Kiev, as opposed to remedying the inadequate disclosures themselves, the court finds that such an effort is not permitted. See *Akeva LLC v. Mizuno Corp., 212 F.R.D. 306, 310 (M.D.N.C. 2002)*. As one district court has opined:

> The court cannot accept a definition of [**35] supplementation which would essentially allow for unlimited bolstering of expert opinions. *Rule 26(e)* envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was incorrect or incomplete and, therefore, misleading. It does not cover failure of omission because the expert did an inadequate or incomplete preparation. To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek havoc in docket control and amount to unlimited expert opinion preparation.

*Id.* Such an effort to bolster would amount to an out-of-time disclosure in violation of the Scheduling Order and resulting in unjustifiable delay to these proceedings and prejudice to the defendant. See *id. at 311* (describing that deliberate delay and prejudice to opposing party are factors to be considered in determining whether disclosure should be permitted).

Moreover, as the court understands the plaintiff's oral

Case 4:12-cv-00049-MSD-TEM  Document 42-1  Filed 10/05/12  Page 10 of 10 PageID# 542

Page 10

230 F.R.D. 452, *462; 2005 U.S. Dist. LEXIS 21222, **35;
62 Fed. R. Serv. 3d (Callaghan) 615

motion, the plaintiff is not simply attempting to add additional or corrective information, which would trigger her duty to supplement under *Rule 26(e)(1). Fed. R. Civ. P. 26(e)(1)* [**36] . Rather, the plaintiff is requesting additional time for Dr. Hoffman [*463] and Dr. Kiev to recast and rework their initial opinions so as to comply with the requirements of *Rule 26(a)(2)(B)* and withstand summary judgment. As indicated above, such an effort is not contemplated by *Rule 26(e)(1)*.

There is no substantial justification for granting additional time. Nor do the Federal Rules of Civil Procedure permit the type of supplementation desired. The court, however, would be more well disposed to the plaintiff's motion if additional efforts to amend or supplement would result in properly supported and otherwise admissible final opinions. In this case, however, the problem is not merely one of the omission of a discussion of the standard of care or the failure to set forth a reasonable basis for the ultimate opinion provided by either doctor. The fatal flaw in the expert reports is the fact that neither doctor is able to affirmatively state that a breach by the defendant's agents was "more likely" or "more probably" the cause of Mr. Sharpe's injury. See *Fitzgerald, 679 F.2d at 349-50*. In other words, the fundamental problem does not reside in the language used or omitted [**37] in the reports; rather it is the revealed lack of certainty on the issue of causation. This a foundational flaw in the plaintiff's case that cannot be overcome by allowing the plaintiff additional time to amend because in order to do so the opinions of Dr. Hoffman and Dr. Kiev would have to effectively change. See *Fitzgerald, 679 F.2d at 350* (describing that "if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment").

If Dr. Hoffman and Dr. Kiev were not able to state with the required degree of certainty that a breach of the applicable standard or care was "more probably than not" caused by the action of the defendant's agents, no amendment or finessing of the language of their reports will alter this conclusion. It is this lack of certainty and, thus, admissibility, of the expert opinions that, above and beyond the described procedural inadequacies, requires an award of summary judgment. See *id*. Accordingly, the court does not believe that leave to amend or supplement is warranted [**38] in this case.

IV. Conclusion

Although the plaintiff's case does suffer from certain procedural inadequacies, the court believes that these inadequacies, far from merely representing incomplete opinions, reveal the substantive failings in the plaintiff's claim of negligence. The expert reports of Dr. Hoffman and Dr. Kiev offer ultimate conclusions laced with conjecture and speculation. See *Fitzgerald, 679 F.2d at 349*. It is also true that these reports fail to set forth the standard of care and fail to state reasonable bases for the opinions contained therein. See *Fed. R. Civ. P. 26(a)(2)(B)*. But even if these failings were cured by giving the plaintiff time to amend or supplement the reports, the concluding opinions, even if properly supported, are still insufficient to withstand summary judgment.

Accordingly, the plaintiff's oral motion to amend or supplement her *Rule 26(a)(2)(B)* disclosures is **DENIED**. The defendant's motion to exclude the testimony of the plaintiff's expert and its motion for summary judgment are **GRANTED**.

The Clerk is **REQUESTED** to mail copies of this order to counsel for all parties. [**39] It is so **ORDERED**.

Jerome B. Friedman

UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

August 4, 2005

Exhibit A